**In re Nikki McCARTHY, Trustee for Generations Land Trust, Debtor.**

**No. 03–24849–VJ.**

United States Bankruptcy Court,
D. Nevada.

July 21, 2004.

J.E. Ring Smith, Las Vegas, NV, for debtor.

## MEMORANDUM AND ORDER RE COURT SANCTIONS FOR BAD FAITH FILING

LESLIE J. TCHAIKOVSKY, Bankruptcy Judge.

On March 24, 2004, the Court issued a Tentative Decision Re Order To Show Cause and Order Thereon (the "Tentative Decision"). A copy of the Tentative Decision is attached hereto as an Addendum. In the Tentative Decision, the Court found and concluded that the above-captioned case had been filed in bad faith and that both Nikki McCarthy ("McCarthy") and

the attorney representing her, J.E. Ring Smith ("Smith"), should be sanctioned under Rule 9011 of the Federal Rules of Bankruptcy Procedure. The Court gave McCarthy and Smith thirty days to file a written response to the Tentative Decision.

McCarthy and Smith filed a joint response, contending that the filing was not in bad faith. They contended that their omission of close to $1 million in secured debt was simply an oversight, not an intentional omission. They contended that it was legitimate to file a case simply to delay foreclosure on real property where the real estate market is resulting in rapid appreciation. They did not explain having filed a chapter 13 on behalf of an entity or filing any type of bankruptcy case on behalf of a nonbusiness trust. Although Smith apparently considered himself competent to represent an entity filing a bankruptcy petition, he confessed in his written response that he had never before heard of the "new debtor syndrome."

The Court is not persuaded by the written response that the filing of this case was in good faith. The most troubling aspect of the case is that Smith and McCarthy apparently continue to believe that their conduct was proper. Smith asks the Court to excuse or reduce the sanctions. Instead, the Court will suspend them. The purpose of sanctions in this context is deterrence. The Court will suspend the sanctions proposed in the Tentative Decision with respect to both McCarthy and Smith pending their future forbearance in filing bad faith bankruptcy cases in any bankruptcy court in the United States. The Court intends to publish this Memorandum with the attached Tentative Decision to alert other courts to its contents. If McCarthy or Smith is found by the filing court to have filed a bad faith case hereafter, the sanctions set forth in the Tentative Decision will be doubled and

will become immediately due without further order of this Court.

Good cause appearing therefor, it is

SO ORDERED.

## ADDENDUM

## TENTATIVE DECISION RE ORDER TO SHOW CAUSE AND ORDER THEREON

The above-captioned case has been dismissed without objection by the debtor. However, the Court retained jurisdiction to determine whether Nikki McCarthy ("McCarthy") and/or the above-captioned debtor's attorney of record, J.E. Ring Smith ("Smith") should be sanctioned for having filed the case in bad faith. McCarthy and Smith appeared before the Court on February 25, 2004 at a hearing on the Court's order to show cause why they should not be sanctioned for filing the case. At the conclusion of the hearing, the Court took the matter under submission.

The Court was prepared to issue this Memorandum as a final decision, issuing the sanctions described below against McCarthy and Smith. However, having reviewed the recent case of *In re DeVille*, 361 F.3d 539, 2004 WL 490009 (9th Cir. 2004), the Court has concluded that it should issue this Memorandum instead as a tentative decision, giving McCarthy and Smith a further opportunity to file a written response if they desire to do so. McCarthy and Smith will be given until 30 days from the date of this tentative decision to file such a written response. No further hearing will be scheduled unless the Court deems one appropriate after reviewing the response.

### SUMMARY OF FACTS

The above-captioned case was filed as a chapter 13 case on December 4, 2003. The debtor is described in the petition as a

land trust. Both McCarthy and Smith signed the bankruptcy petition.

The Summary of Schedules lists real property with a value totaling $1,053,000 and secured debt totaling $590,578. It lists no personal property and no unsecured debt. Schedule A lists five separate properties: (1) 5145 Mascaro Drive, Las Vegas, Nevada (the "Mascaro Drive property"); (2) 8805 Spanish Mountain Drive, Las Vegas, Nevada ("Spanish Mountain Drive property"); (3) 904 N. 21st Street, Las Vegas, Nevada (the "21st Street property"); (4) 2770 Celebrate Court, Las Vegas, Nevada (the "Celebrate Court property"); and (5) 8634 Panuco Way, Las Vegas, Nevada (the "Panuco Way property").[1]

■ Item 21b of the Statement of Financial Affairs directs the debtor, if a corporation, to list all officers and directors and each stockholder with 5 percent or more of the voting shares. Smith and McCarthy failed to provide any information in response to this question. The record does not reveal the identity of those individuals who hold the beneficial interests in the trust.[2] McCarthy signed the Schedules of Assets and Liabilities and Statement of Financial Affairs.

The Court heard a motion for in rem relief from the automatic stay filed by a secured creditor holding a deed of trust on the Spanish Mountain Drive property on January 28, 2004. The secured creditor

noted that the mortgagor, an individual named Luz Cabanting ("Cabanting"), had not made a payment on the secured claim since January 2003. A foreclosure sale had been scheduled for November 13, 2003. Immediately prior to the sale, according to the secured creditor, Cabanting purported to convey the Spanish Mountain Drive property to an individual named Jan Skyrod ("Skyrod"). Immediately thereafter, Skyrod filed a chapter 13 case in the Central District of California.

The secured creditor stated that, due to Skyrod's failure to comply with numerous requirements of her bankruptcy, the case was dismissed on November 26, 2003. As a result, a new foreclosure sale was scheduled for December 18, 2003. On or about December 4, 2003, Skyrod purported to convey the Spanish Mountain Drive property to the Land Trust, and the Land Trust filed this bankruptcy case. The secured creditor noted that, as an entity, the Land Trust is not eligible to be a chapter 13 debtor. In addition, it contended, the series of events recited evidenced bad faith, justifying relief from the automatic stay.[3]

At the hearing on the motion, Smith conceded that the Land Trust was not eligible to be a chapter 13 debtor. He provided no explanation for having filed a chapter 13 case on behalf of the debtor. He indicated that he had contemplated moving to convert the case to a chapter 11

---

1. Other properties appear to have been transferred to the debtor after the bankruptcy petition was filed. Smith and McCarthy contend that these transfers were unsolicited and unwelcome.

2. The debtor purports to be a business trust, which, for bankruptcy purposes, is considered a corporation. See discussion below.

3. The Court believes that the amount of secured debt listed on the debtor's schedules was intentionally understated. Schedule D

lists no secured debt for the Spanish Mountain Drive property. However, in a motion for relief from the automatic stay filed by the secured creditor on that property on January 2, 2004, the unpaid principal of the secured claim was stated to be $956,790.14. If this claim had been included, the debtor would not have qualified as a chapter 13 debtor for still another reason. The secured debt limits for a chapter 13 debtor were at that time $871,550. This claim alone disqualifies the debtor to be a chapter 13 debtor.

case. However, he stated that he had no opposition to its being dismissed. The Court dismissed the case, retaining jurisdiction to determine whether Smith and/or McCarthy should be sanctioned for filing the bankruptcy case. Thereafter, the Court issued an order to show cause directed to Smith and McCarthy, which was heard on February 25, 2004.

In the order to show cause, the Court noted that, in addition to the Land Trust not being qualified to be a chapter 13 debtor, it was not qualified to be a debtor in any bankruptcy case because it was not a business trust. Both Smith and McCarthy appeared and participated at the order to show cause hearing. An opposition to the order to show cause was filed on the day of the hearing. At the hearing and in the opposition, Smith and McCarthy contended that the Land Trust was a business trust and thus qualified to be a debtor, albeit not a chapter 13 debtor. The Court took the matter under submission.

In the course of these proceedings and as a result of reviewing the case file, the Court has learned that the bankruptcy case was the third in a series of bankruptcy filings affecting one of the other properties: i.e., the Celebrate Court property. The facts relating to that property are even more egregious than those relating to the Spanish Mountain Drive property. The Celebrate Court property is (or was) owned by an individual named Robyn E. Howell ("Howell"), who resides in Delta, Utah. Howell purchased the Celebrate Court property in 2000 with another individual. After making payments on the secured debt for approximately 14 months, in or about October 2002, Howell and her associate defaulted, and foreclosure proceedings were commenced.

On or about April 11, 2003, to stop an impending foreclosure sale, Howell filed a chapter 13 bankruptcy petition in Salt Lake City, Utah. Smith admitted having helped Howell prepare this petition. He admits that it was not the proper venue in which the case should have been filed and that the case was filed there because Howell did not want her neighbors to know she had filed for bankruptcy. Smith contends that this is a legitimate practice.

The chapter 13 case was a skeletal filing. It was purportedly filed by Howell to buy time to complete a sale of the Celebrate Court property. The case was dismissed due to her failure to comply with various procedural requirements. Howell then transferred the Celebrate Court property to Skyrod who, as discussed above, filed a chapter 13 case in the Central District of California. This case was also dismissed based on various procedural defects. Finally, like the Spanish Mountain Drive property, the Celebrate Court property was then transferred to the Land Trust, and this case was filed. The common thread between these two properties and three bankruptcy cases is Smith and, to a lesser extent, McCarthy, who also participated in some fashion in the Skyrod bankruptcy filing.

## DISCUSSION

### A. ARE SANCTIONS APPROPRIATE?

There are numerous reasons why the above-captioned chapter 13 case should never have been filed. The first is that the Land Trust is an entity, not an individual. Only individuals are eligible to be chapter 13 debtors. 11 U.S.C. § 109(e). While McCarthy is an individual, she did not file in her individual capacity. She filed as trustee for the Land Trust. Neither McCarthy nor Smith have provided any excuse for filing a chapter 13 case for an entity. Moreover, as noted above, the Court believes that Smith and McCarthy

purposely omitted a large part of the debt secured by the real property listed in the schedules so that it would not be immediately apparent that the Land Trust did not meet the chapter 13 debt limits.

■ Second, the case is a successive filing. As discussed above, it is the second case filed affecting the Spanish Mountain Drive property and the third affecting the Celebrate Court property. The secured creditors on those properties have received no mortgage payments during the pendency of these bankruptcy cases. Moreover, the explanation provided for filing these cases in multiple and inappropriate venues is unacceptable. A debtor may not file wherever a bankruptcy petition wherever she wants just so as to avoid being known by her neighbors as a bankruptcy filer.

■ Third, even if the case had been filed in the proper venue as a chapter 11 case, the Court would find it to be a bad faith filing. It has many of the indicia of a bad faith filing filed by an entity owning real property simply to forestall a foreclosure with no legitimate reorganization purpose. *See In re Phoenix Piccadilly, Ltd.,* 849 F.2d 1393, 1394–95 (11th Cir.1988) (identifying the circumstantial factors courts have found to evidence a bad faith chapter 11 filing);[4] *In re Trident Associates Limited Partnership,* 52 F.3d 127, 131 (6th Cir.1995). More specifically, it falls into the category of bad faith filings commonly known as the "new debtor syndrome." *See In re Duvar Apt., Inc.,* 205 B.R. 196 (9th Cir. BAP 1996).

In *Duvar,* an apartment building located in Los Angeles was owned by an individual named Houriani who obtained a loan secured by a deed of trust on the property. In 1993, Houriani sold the apartment building to an individual named Tysen without informing the secured creditor, taking back a deed of trust for the portion of the purchase price that wrapped around the secured creditor's note. In 1994, the new owner stopped making payments to Houriani, and Houriani was unable to keep up the payments due to the secured creditor.

In February 1995, Houriani had Tysen transfer the apartment building by a deed in lieu of foreclosure to the debtor, a newly created corporation. The transfer was for no consideration, the deed was not recorded, and no payments were made on the secured debt for the next few months. In August 1995, under threat of foreclosure, Houriani caused the debtor to file a chapter 11 petition. Within a few days, the bankruptcy court granted the secured creditor relief from the automatic stay and dismissed the case as a bad faith filing pursuant to the "new debtor syndrome." *Id.,* 205 B.R. at 199.

On appeal, the Bankruptcy Appellate Panel affirmed. It noted that common indicia of a "new debtor syndrome" bad faith filing are: (1) transfer of distressed property into a newly created corporation; (2) transfer occurring within a close proximity to the bankruptcy filing; (3) transfer for no consideration; (4) the debtor has no assets other than the recently transferred property; (5) the debtor has no or minimal unsecured debt; (6) the debtor has no employees and no ongoing business; and (7) the debtor has no means, other than the transferred property, to service the

---

4. While one of the factors generally listed as evidence of a bad faith filing is that the debtor has only one asset, the Court does not view the fact that there are multiple properties involved in this case as helpful to the debtor.

The fact that the Land Trust received the transfer of more than one property before filing is more likely to transform the case into a criminal enterprise than to excuse it.

debt on the property." *Id.*, 205 B.R. at 200. Virtually all of these indicia are present in the instant case.

■ Finally, it is undisputed that only a business trust is eligible to file a bankruptcy petition. A nonbusiness trust is not eligible. *See In re Hunt*, 160 B.R. 131 (9th Cir. BAP 1993).[5] McCarthy and Smith do not contest that only a business trust can be a bankruptcy debtor. Rather, they contend that the Land Trust qualifies as a business trust.

The Court has found a number of reported bankruptcy decisions addressing the issue of whether a trust filing a bankruptcy petition qualifies as a business trust. Some courts have focused on whether the beneficial interests in the trust are freely transferable. *See In re Woodsville Realty Trust*, 120 B.R. 2, 4 (Bankr.N.H.1990). Others have examined whether the trust was formed for a business purpose. *See In re BKC Realty Trust*, 125 B.R. 65 (Bankr.D.N.H.1991). Still other courts have found it significant whether there were outside investors or participants in the trust. *See In re Parade Realty, Inc. Employees Retirement Pension Trust*, 134 B.R. 7, 8–11 (Bankr. D.Haw.1991).

However, none of these cases involve land trusts. The Court has found two cases addressing the issue with respect to land trusts: i.e., *In re Treasure Island Land Trust*, 2 B.R. 332 (Bankr.M.D.Fla. 1980) and *In re Cohen*, 4 B.R. 201 (Bankr. S.D.Fla.1980). Both decisions hold that the land trusts do not qualify as business trusts. For example, in *Cohen*, the court found that there was no business separate and apart from the " 'protection and conservation' " of the trust property and that this did not qualify as a business activity. *Id.*, 4 B.R. at 208.

■ Similarly, the *Treasure Island* court found that the trust instrument, which stated that the purpose of the trust was "to hold title to the trust property and to protect and conserve it until its sale or other disposition[,]" belied the debtor's contention that it was a business trust. *Id.*, 2 B.R. at 334. The fact that the instant trust holds title to multiple properties which it seeks to protect and conserve until resale does not represent a distinction that makes a difference. Moreover, by Smith's and McCarthy's own admissions, the Land Trust was formed for the express purpose of filing a bankruptcy petition. This appears to be an essential part of its business plan. A trust formed for such a purpose may clearly not qualify as a business trust, regardless of its other attributes.

■ Based on the facts recited above, the Court finds and concludes that the above-captioned case was filed in bad faith and that Smith and McCarthy should both be sanctioned for their conduct. As an attorney, who should have known better, the Court views Smith as more culpable than McCarthy. However, McCarthy did not appear blameless. While she appeared unsophisticated, she did not appear naive. The Court concludes that McCarthy could not reasonably have believed that transferring properties in foreclosure to a trust that would then file a bankruptcy case was a legitimate business activity. Neither she nor Smith appear to have had provided any plan for curing the defaults on the

---

5. The principle that a nonbusiness trust is not eligible to file a bankruptcy petition is based on the fact that only a "person" is eligible to file. 11 U.S.C. § 109(d). "Person" means "individual, partnership and corporation[.]"

11 U.S.C. § 101(41) A "corporation" includes a business trust. 11 U.S.C. § 101(9)(A)(v). Courts have inferred, therefore, that a "corporation" does not include a nonbusiness trust. *In re Hunt*, 160 B.R. at 134–35.

properties. The plan appears to have been to use the automatic stay to delay foreclosure to give the former owners more time to find buyers for the property or to raise sufficient money to buy the properties back from the debtor. Presumably, the debtor would expect to receive some payment for the service it provided to the former owners by filing the bankruptcy case. The Court does not consider this a legitimate business activity.

## B. WHAT SANCTIONS ARE APPROPRIATE?

The Court relies on Rule 9011 of the Federal Rules of Bankruptcy Procedure ("Rule 9011") as the source of its authority to issue sanctions against Smith and McCarthy for the above-described conduct. Rule 9011(b) provides, in pertinent part, that:

> By presenting to the court...a petition, pleading, written motion, or other paper, any attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation; ...

The Court finds and concludes that, under these circumstances, by filing the above-captioned case, Smith and McCarthy violated this rule.

■■■■ Rule 9011(c)(1)(B) provides that:

(c) *Sanctions.* If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms or parties that have violated subdivision (b) or are responsible for the violation.

. . .

(1) *How Initiated.*

. . .

(B) *On Court's Own Initiative.* On its own initiative, the court may enter an order describing the specific conduct that appears to violate subdivision (b) and directing an attorney, law firm, or party to show cause why it has not violated subdivision (b) with respect thereto.

Rule 9011(c)(2) provides that:

(2) *Nature of Sanction; Limitations.* A sanction imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.[6]

---

**6.** Rule 9011(c)(2)(B) provides that "[m]onetary sanctions may not be awarded on the court's initiative unless the court issues its order to show cause before a voluntary dismissal or settlement of the claims made by or against the party which is, or whose attorneys are, to be sanctioned." The Land Trust filed a motion to dismiss the case on January 26, 2004. The Order to Show Cause and the Order granting the motion to dismiss were both filed on January 30, 2004. However, the Order to Show Cause was docketed before-the Order granting the motion to dismiss. As a result, by a hair, the Court may impose a monetary sanction against Smith and McCarthy under Rule 9011.

Thus, because the Court initiated this proceeding pursuant to an order to show cause, it may not require Smith or McCarthy to pay a sanction to the parties harmed by their conduct—i.e., the secured creditors. The Court may only order them to pay a penalty to the court.

The Court believes that ordering McCarthy to pay a fine of $2,500 to the bankruptcy court is an appropriate sanction for her role in filing this case and will be sufficient to deter her from participating in any such schemes in the future. As noted above, the Court finds Smith more culpable than McCarthy. Moreover, he is the common thread connecting the Salt Lake City bankruptcy case filed by Howell, the Central District of California case filed by Skyrod, and the instant case. The Court believes that Smith should be ordered to pay a fine of $10,000 to the court. McCarthy and Smith will each be given 90 days to pay the fines. If the fines are not paid, contempt proceedings will be commenced.

### ORDER

Based on the foregoing facts and tentative conclusions of law, it is hereby

ORDERED that McCarthy and Smith shall have until 30 days from the date of this Tentative Decision and Order thereon to file a written response.